209 P.2d 728

**KOEGLER v. C. F. DAVIDSON CO. et al.**

**No. 7489.**

Supreme Court of Idaho.

June 28, 1949.

As Corrected on Denial of Rehearing

Sept. 27, 1949.

W. B. McFarland, Coeur d'Alene, Harry M. Morey, Spokane, Wash., for respondents.

Frank L. Benson, Boise, Pete Leguineche, Boise, for appellant.

KEETON, Justice.

Claimant (appellant) sustained an injury to his right shoulder as the result of an accident arising out of and in the course of his employment with the employer, C. F. Davidson Company, on April 7, 1944. No

settlement having been made with the employer, a hearing was had before the Board on the 20th of October, 1944. Findings and an award were made which were filed January 9, 1945. On March 18, 1948, appellant wrote the Industrial Accident Board a letter which the Board construed as an application for a review of the award formerly made because of a change of condition subsequent to the award. A hearing was had on such application, and on July 29, 1948, the Board denied further compensation and medical treatment. Petition for rehearing was filed by appellant and denied. From the order denying further compensation and from the order denying appellant a rehearing appellant appealed.

A brief review of the undisputed facts shows that the appellant was a carpenter at the time of the accident, and while working on a scaffolding the same gave way and to prevent falling appellant caught his entire weight upon his right arm, throwing a severe strain on the right shoulder, which pulled his arm into a position of extreme flexion.

The day after the accident appellant's employment was terminated, and he being unable to secure a hospital ticket or medical treatment from the employer, went to his home at Kalispell, Montana, where he was treated by a Dr. Towne, and from which place gave formal notice of the accident and injury to the Industrial Accident Board and to respondents.

The employer furnished the appellant with no reasonable medical, surgical or other treatment at any time, and such treatment as appellant received was secured at his own expense, which was later paid by respondents.

Under date of July 8, 1944, respondents' agent wrote Dr. Towne at Kalispell, Montana, refusing at that time to admit liability in the case and advised Dr. Towne that the respondents would not admit liability for further treatment.

It is very apparent from the record of the hearing held in October, 1944, that the appellant was unfamiliar with his rights under the Workmen's Compensation Law, and did not understand the nature or scope of the inquiry. He rested his case without offering any substantial evidence of the extent of injury or respondents' liability.

The Board, of its own motion, ordered that appellant be examined by Drs. Grieve, Boyd & Lynch, of Spokane; and it was stipulated between the parties that the report of such doctors should be admitted in evidence, and considered by the Board in making its findings of facts, conclusions of law and award, together with the other evidence adduced at the hearing. Drs. Grieve, Boyd & Lynch examined the claimant on November 10, 1944, and reported that the appellant, as a result of the accident, had a definite atrophy of the muscles, a limitation of motion, considerable pain, tenderness on palpation over the head of the humerus, tenderness over the supraspinatus muscle,

tenderness in the axillary, limited range of motion in the neck, a mild amount of acromioclavicular arthritis, and among other things, "Mr. Koegler * * * is now suffering considerable disability. It seems quite probable that he suffered a rupture of the supraspinatus tendon", and further, "We believe it would be worth while to operate on the shoulder and explore the supraspinatus tendon; probably repair it. Mr. Koegler should wear a shoulder spica cast for a month or 6 weeks following the operation and should then have a platform or aeroplane splint that he can remove or wear part time after the cast is removed. He will probably need considerable physiotherapy after the cast is removed".

A letter from Alfred O. Adams, M.D., of Spokane, dated September 18, 1944, was admitted in evidence on behalf of respondents. The doctor reported: "there is some crepitus in this shoulder joint and a slight * * noticeable atrophy of the supraspinatus and infraspinatus muscles of the shoulder". That "X-rays taken of the shoulder revealed no bone injury, dislocation or pathology", and in his conclusion "there is a slight amount of atrophy and a very little limitation of motion. This is sufficient to indicate that he has had some pain and discomfort in this joint * * * and I would anticipate that it will continue to improve to a point where he will have little or no permanent disability. His progress would be more rapid if he had some physical therapy treatment in the nature of heat, massage and exercise to the right shoulder * * * this should be given by an experienced physical therapist."

A letter dated October 19, 1944, from R. L. Towne, M.D. was admitted in evidence in which the doctor, referring to the appellant said: "He has been a victim of torn ligaments in his right shoulder. While his condition has improved he has not experienced complete recovery, and in my opinion, the continuance of diathermy would still be beneficial to him"

The Board made findings that the claimant's condition was fixed on the 20th of October, 1944, and his partial permanent disability was equivalent to fifty percent of the loss of the arm by amputation at the shoulder, and made an award based on such findings.

██ Among the primary duties of an employer to an injured workman is to furnish him reasonable medical, surgical and other treatment necessary to rehabilitate him and as far as possible restore his health, usefulness and earning capacity. No reasonable attempt was made in this case to furnish the appellant with such medical, surgical or other treatment, notwithstanding the fact that all the doctors that examined the appellant and particularly the doctors appointed by the Board found that the appellant was not surgically healed and further and additional surgical and medical treatment were necessary for appellant's recovery.

420

■ A review, pursuant to appellant's letter dated March 18, 1948, was held in Wallace, Idaho, on June 22, 1948, and was considered amended by statement of attorney Smith, and a letter from Dr. Towne. The Board found that the letter with the amendment and statement of the attorney constituted a sufficient application for further compensation based on a change of condition. Whether the letter and application were sufficient or not is not before this Court for review as the respondents did not appeal from the ruling thereon.

At this hearing the appellant again furnished no medical testimony in support of his claim, and the Board had the appellant examined by Dr. Paul M. Ellis, a member of the Silicosis Panel, who testified as a witness called by the Industrial Accident Board.

The doctor testified that he had that day examined the appellant, had been supplied with findings of facts, rulings of law and award of the Board made January 9, 1945, and that such examination disclosed that the appellant walked with his right shoulder held close to his body, that it droops about an inch and a half or two below the normal location, and that there was a marked wasting of the supraspinatus and infraspinatus muscles. He testified further that appellant's arm is very painful, that appellant was not able to get more than a fifteen or twenty degree abduction of the arm at the shoulder, that he was able to place his hand across his abdomen after some little time with the support of the other hand, and that appellant had difficulty in raising his arm rapidly from a dropped position; that in testing the sensation along the hand and forearm, the doctor found disturbance of the sensation. The doctor also testified as to an examination of x-rays taken of the shoulder the day before, as follows:

"The only thing of significance is a marked lessening of the space between the head of the humerus and the glenoid fossa of the shoulder joint. That is quite roughened, and the head of the humerus and also the prominent part of the shoulder show osteoporosis or atrophy of the bone which is probably due to disuse. There is no evidence at this time of any fracture. It is my opinion that this man suffered—I will state my findings this way. He has a wasting of the supraspinatus and the infraspinatus muscles. Marked limitation of motion in abduction and rotation of the arm. There is tenderness over the supraspinatus tendon and over the shoulder joint in general. There is a small mass palpable over the point of insertion of the supraspinatus tendon which may be the end of a ruptured tendon. The test of sensation and inability to discriminate pain over the forearm, I have already gone into. My opinion is this claimant has suffered a severe injury to the shoulder involving the ligaments about the shoulder, the capsule of the joint, and he may have suffered a rupture of the supraspinatus tendon. It

is my opinion that he could be greatly benefited by surgical procedure in the hands of a competent orthopedic surgeon, and that a great deal of usefulness of this arm might be restored; that in his present condition, due to inability to use his arm at any work or gainful occupation, and his extreme apprehension in regard to handling of the arm constitutes a severe loss, so much so, that I feel that he might be better if the arm were amputated, and he could follow a gainful occupation without worrying about causing pain to the injured arm, and he could use his other arm freely."

and further:

"I feel in my own mind that certainly that arm could be made better than it is. It should be restored to usefulness,—100% usefulness would be too much to expect, but it should be recovered enough so that he could support himself and earn a livelihood".

In answer to a question as to whether or not claimant was able to follow his occupation, the doctor answered that the claimant had been unable to follow his occupation in the doctor's opinion since the accident.

The doctor was then asked:

"Q. Has the passage of time reduced the possibility of surgery improvement? A. No, I don't think so. It might, the degree of improvement, but I feel there is a very good chance of improvement in the use of that arm."

The doctor further testified:

"In the patient's history furnished by the Board I noted that two men who have had a great deal of experience with that type of thing felt there was a possiblity of a rupture of the supraspinatus tendon. The operation in itself is simply exposing the shoulder joint, and, if the tendon is ruptured, bring it down and resuture it, making it possible to raise the arm from the joint. It is an operation we don't see a great deal. I think there are a great many men who don't—it is rare enough we don't always consider it with other shoulder joints. I know the results of that operation have been unusually good and a great many of them have been done. We have had reports on several hundreds."

Dr. E. J. Fitzgerald was called as a witness for the respondents. After reciting a history of the case he testified that he had that. day examined appellant and found: "While standing there was a definite droop to the right shoulder; that there was a definite atrophy of the supra and infraspinatus muscles; that when patient's attention was distracted through conversation or when he was removing or putting on his clothes, it was noticed that he was able to abduct his arm to the extent of about twenty to thirty degrees. No crepitation could be felt in the right shoulder joint since it was impossible to actively or passively move the shoulder joint * * * The skin of both hands were smooth, indicating he had not been doing

very much strenuous work. * * * He had little, if any grasp in the right hand. I could not get him to squeeze my hand or give me any information about the grasp —the strength of his grasp. He (referring to the patient) resisted any attempt to move his right arm nor would he attempt to actively move it himself. * * * *It is too long, in my opinion, for anyone to accurately determine what the diagnosis was four years ago."*

Dr. Fitzgerald further testified it was impossible to evaluate the pain.

Mr. Oppenheim, a member of the Board, asked Dr. Fitzgerald for an estimate of the present disability of the appellant to which the doctor answered:

"It is a most difficult thing to do, especially in this case because there are so many anatomical conditions present here that are so out of line with the history of the patient,—the lack of use of the arm which is not borne out by the complete wasting of the very muscles that he would have to use, —that influences me considerably in making an estimate.

"Mr. Oppenheim: Applying the sole test, the physical findings of your examination, physical impairment on your findings without history, physical impairment alone.

"A. I would estimate his permanent partial some place between 35 and 50% of the loss of the arm at the shoulder."

Dr. Fitzgerald testified further that there was a psychological aspect to the case.

■ In appellant's brief he assigns as error the Industrial Accident Board's failure to obtain the testimony of Dr. Towne, of Kalispell, Montana, and Drs. Grieve and Lynch of Spokane. The appellant in the first instance had a right to call such witnesses and produce such testimony as might be pertinent to the inquiry.

Furthermore, the Board could not have enforced the personal attendance of these doctors in that they were nonresidents of the state and beyond the reach of a subpoena.

■ The fact that the Board found on the original hearing that the disability to appellant was equivalent to fifty percent of the loss of the arm at the shoulder and the further fact that there was testimony in the record at the rehearing that the permanent partial disability was not any greater would not be conclusive of the question as to whether or not the appellant had a recurrence such as to entitle him to further relief under the Workmen's Compensation Act. I.C. § 72–101 et seq.

■ Viewing Dr. Fitzgerald's testimony in the most favorable light to respondents, it cannot be said that there had not been a change of condition.

Appellant's need of medical and surgical treatment was undisputed and uncontradicted.

Dr. Ellis testified that the appellant is totally disabled for work and it might be better if his arm were amputated, and there

was at the time of the examination "a marked lessening of the space between the head of the humerus and the glenoid fossa of the shoulder joint. This is quite roughened and the head of the humerus and also the prominent part of the shoulder show osteoporosis or atrophy of the bone". This must necessarily have developed subsequent to the first hearing.

■ Though the Board originally found that appellant's condition was fixed as of October 20, 1944, in view of the uncontradicted testimony in the present hearing that the appellant is not surgically healed and badly in need of medical and surgical treatment, by reason of the accident, the only reasonable, logical conclusion that can be made is that appellant must have had a change of condition. The testimony now shows such a change of condition as to require further surgical and medical treatment, and that the appellant might with proper medical and surgical treatment be more nearly restored to health. Hence the Board erred in denying appellant's claim and dismissing the action.

■ Where the findings of the Board are not supported by competent, substantial evidence, the rule is well established that the decision of the Board may be set aside as a matter of law. Aranguena v. Triumph Mining Co. 63 Idaho 769, 126 P.2d 17.

■ In the examination of appellant, he expressed a preference to be treated at Mayo clinic. The appellant is not entitled to be treated at any particular clinic, or by any particular doctor, but the respondents are required to furnish appellant with reasonable medical, surgical or other treatment as may be reasonably necessary. Sec. 72-307, Idaho Codes. Such treatment should be tendered the appellant. Appellant is also entitled to be paid total temporary disability during the recovery period.

The order of the Board is reversed and the cause remanded, with instructions to the Industrial Accident Board to proceed further in accordance with the views herein expressed. The Board may on request of either party or of its own motion hear further testimony. Costs are awarded to the appellant.

HOLDEN, C. J. and GIVENS, PORTER and TAYLOR, JJ., concur.